IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| STEVEN CHRISTOPHER HUGHES | § | |
| SHELLEY HUGHES | § | |
|     DEBTOR(S) | § | CASE NO. 05-41471-H5-7 |
| | § | |
| ANNA LORRAINE WILLIFORD | § | |
| McCREY | § | |
|     PLAINTIFF(S) | § | ADVERSARY NO. 05-3793 |
| | § | |
| VS. | § | |
| | § | |
| STEVEN CHRISTOPHER HUGHES | § | |
|     DEFENDANT(S) | § | |

**MEMORANDUM OPINION REGARDING COMPLAINT
OBJECTING TO DISCHARGE OF DEBT**

Before the Court is the complaint of Anna Lorraine Williford McCrey objecting to the discharge of a debt owed by debtor to her. This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding.

**I. Facts**

McCrey and debtor met at a casino in Lake Charles, Louisiana in April 2000. In August of 2000, the couple moved into an apartment together in Houston, Texas. At that time, McCrey was not employed. In October 2000, a jury awarded McCrey

judgment in the amount of $250,000, for injuries McCrey suffered when she was run over in 1995 by an 18-wheeler. After paying attorneys fees, expert witness fees, a loan from her grandmother, her car note and other bills, McCrey had approximately $53,000, remaining as of November 2000. McCrey testified that during her period of unemployment which lasted until June 2001, she did not want to use any of the lawsuit proceeds for living expenses, instead she wanted to use the funds to buy a house. McCrey testified that she paid for her living expenses for her year of unemployment with approximately $14,000 in cash she had received from her grandmother and from a refund of expert witness fees from her trial.

McCrey attempted to open a checking account in order to deposit the lawsuit proceeds, but the bank refused her due to a previous bounced check incident. On November 17, 2000, McCrey deposited the lawsuit proceeds into debtor's checking account with the understanding that the funds were not to be used without her consent because she was saving to buy a house. In furtherance of her desire to buy a house, McCrey authorized debtor to use $14,280, of the lawsuit proceeds to pay a credit card debt which was impeding the couple's ability to qualify for a mortgage.

McCrey and debtor bought a house in December 2000, using McCrey's funds for the earnest money, down payment, and closing costs, totaling $17,324.53. With the $20,000 of her lawsuit proceeds remaining, McCrey authorized the use of her

funds to buy home decorating supplies, a mattress and box springs, a dinette set, a pool table, a black jack table, a TV, and a dog. By January 22, 2001, debtor's checking account had been reduced to $2,000.

During McCrey's year of unemployment, McCrey frequently used debtor's American Express card to pay for purchases and the couple used the funds in debtor's checking account and McCrey's cash, which she kept in a drawer in her home, to pay for living expenses, including 6 months of lease payments on the apartment debtor rented when he and McCrey first moved in together in August 2000 and $1,000 per month mortgage payments once they purchased the house in December 2000.

In June 2001, McCrey got a job as a phlebotomist paying $14 per hour. In November 2001, McCrey learned that debtor was having an affair with her sister. Eventually, debtor moved out of the house leaving McCrey with all of the joint purchases and McCrey's grandmother paid off the house note.

McCrey sued debtor at state court for the amount she believed should have remained from the lawsuit proceeds after deduction for authorized expenses. McCrey obtained a judgment against debtor on April 1, 2005, in the amount of $46,142.00. This bankruptcy case was commenced by debtor and his wife on July 28, 2005.

## II. 11 U.S.C. § 523

McCrey contends that her debt is not dischargeable under 11 U.S.C.§523(a)(4) and 11 U.S.C. §523(a)(6). Those sections provide:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
> . . . .
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
> . . . .
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity. . .

11 U.S.C. § 523. McCrey contends that debtor breached a fiduciary duty to her as trustee of her lawsuit proceeds.

"[T]he concept of fiduciary under 11 U.S.C. § 523(a)(4) is narrowly defined, applying only to technical or express trusts, and not those which the law implies from the contract." Matter of Bennett, 989 F.2d 779, 784-785 (5th Cir. 1993) (citing Angelle v. Reed (In re Angelle), 610 F.2d 1335 (5th Cir. 1980)). "In determining whether a particular debtor was acting in a fiduciary capacity for purposes of section 523(a)(4), the Court must look to both state and federal law. The scope of the concept of fiduciary under 11 U.S.C. § 523(a)(4) is a question of federal law; however, state law is important in determining whether or not a trust obligation exists." Id. "[T]he "technical" or "express" trust requirement is not limited to trusts that arise by virtue

of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law." Id. McCrey testified that although she could have placed her money in her grandmother's account or her father's account she placed it in debtor's account instead because she wanted him to trust her. McCrey testified that she and debtor agreed that the money would be spent only at her direction. The bank account was established by debtor when he was sixteen years old and therefore is under his name individually, not as trustee for McCrey. There is no written trust agreement between McCrey and debtor. Despite the absence of trust documentation, McCrey contends that an express trust existed because of the special relationship of trust and confidence she had with debtor.

The Texas Supreme Court has construed the term "fiduciary" to include not only formal fiduciary relationships but also informal relationships between parties where one trusts and relies upon the other. See Texas Bank and Trust Co. v. Moore, 595 S.W.2d 502, 507-509 (Tex. 1980). Texas law recognizes that a trust relationship may be informal, arising from a moral, social, domestic, or a purely personal relationship of trust and confidence. See Thigpen v. Locke, 363 S.W.2d 247, 253 (Tex.1962). Texas law also provides, however, that "not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." Meyer v. Cathey, 167 S.W.3d 327, 330-331 (Tex.2005). Proof of a romantic

relationship is not sufficient to prove a special relationship of trust and confidence giving rise to an informal fiduciary duty under Texas law. Hubbard v. Shankle, 138 S.W.3d 474, 483 (Tex.App.-Fort Worth 2004 writ denied). McCrey's testimony notwithstanding, the Court finds that McCrey and Hughes had no formal or informal written or oral understanding when McCrey deposited her funds into debtor's checking account that they were creating a trust under Texas law that would impose on debtor the duties of a trustee, including the duty of providing McCrey with an accounting upon termination of the trust. McCrey has offered no proof that she depended on debtor or relied on his advice, or that debtor exerted any dominance or influence in their relationship. The Court finds that no express trust existed between debtor and McCrey. Furthermore, even if the couple's relationship and agreement for the deposit of funds were construed as giving rise to a fiduciary relationship, McCrey has failed to prove breach of any fiduciary duty or a defalcation on debtor's part concerning the proceeds of her lawsuit. Moreover, had McCrey created a trust with her deposit of funds in debtor's account, the trust would have terminated in December 2001 when the primary purpose for the deposit was accomplished and McCrey purchased a house. Any duty to account for remaining "trust" funds has been done as McCrey authorized all of the expenditures made with her funds. To the extent that McCrey intended that debtor repay her for her payment of his $14,000 credit card

debt, the Court finds that the debt is an ordinary, unsecured debt. Debtor's failure to repay this debt does not give rise to a claim of breach of fiduciary duty.

As to McCrey's contention that debtor is liable for a willful and malicious injury to her lawsuit proceeds under 11 U.S.C. § 523(a)(6), the Court finds that McCrey has failed to prove an objective substantial certainty of harm or a subjective motive to cause harm to her property on debtor's part. As the Fifth Circuit stated in In re Keaty, 397 F.3d 264 (5th Cir. 2005):

> The Supreme Court, in Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), stated that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." The Fifth Circuit extended Kawaauhau's reasoning in Miller v. J.D. Abrams Inc. (In re Miller), 156 F.3d 598, 603 (5th Cir.1998), and stated that "either objective substantial certainty [of injury] or subjective motive [to injure] meets the Supreme Court's definition of 'willful ... injury' in § 523(a)(6)." (third alteration in original). The court in Miller went on to define the word "malicious" and specifically rejected that it meant an act without just cause or excuse. Id. at 605. Instead, the court defined "malicious" as an act done with the actual intent to cause injury. Id. at 606. The court noted that this definition is synonymous with the definition of "willful" and thus aggregated "willful and malicious" into a unitary concept. Thus, the court held that "an injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." Id. at 606; see also Williams v. IBEW Local 520 (In re Williams), 337 F.3d 504, 509 (5th Cir.2003).

<u>In re Keaty</u>, 397 F.3d at 270. Thus, McCrey has failed to prove the elements of a willful and malicious injury under 11 U.S.C. § 523(a)(6). A final judgment will be entered accordingly.

Signed this **30** day of **Oct**, 2006 at Houston, Texas.

_____
KAREN K. BROWN
CHIEF UNITED STATES BANKRUPTCY JUDGE